**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID W. CAIN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL FRUIT GENETICS, LLC, a California Limited Liability Company,<br><br>Defendant. | Case No. 1:23-cv-01249-JLT-CDB<br><br>ORDER DENYING MOTION FOR SUR-REPLY AND GRANTING IN PART AND DENYING IN PART IFG'S MOTION TO DISMISS<br><br>(Doc. 36) |

## I.   INTRODUCTION

Before the Court is Defendant Close Demeter LLC, formerly known as International Fruit Genetics, LLC's ("IFG") motion to dismiss Plaintiff David Cain's first amended complaint. (Doc. 36.) For the reasons set forth below, the Court grants in part and denies in part IFG's motion.

## II.   BACKGROUND

Dr. Cain spent approximately twenty years as a plant geneticist at IFG developing fruit varietals. (Doc. 34, ¶ 2.) Dr. Cain had no ownership interest in IFG but received yearly royalty payments for the table grape varieties he developed for IFG. (Docs. 34, ¶ 3; 36-1 at 6.) In March 2022, IFG entered into a purchase agreement with SNFL Investment LLC (the "Buyer") to sell IFG. (Doc. 34, ¶ 4.) As part of its purchase of IFG, Buyer required that IFG buy out Dr. Cain's

future stream of royalty payments. (Doc. 36 at 6.) Dr. Cain and IFG entered into a Buyout and Waiver Agreement (the "Buyout Agreement"), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In May 2022, after the purchase agreement and Buyout Agreement were executed, a minority member of IFG sought to invalidate the sale. (Doc. 34, ¶ 5.) Following resolution of the minority member's challenge, the pending sale closed on August 11, 2023. (Doc. 34, ¶ 8.) Dr. Cain brought this suit seeking payment of the royalties allegedly accrued during the pendency of the closing through: (1) a breach of contract claim; (2) a breach of the covenant of good faith and fair dealing claim; (3) an unjust enrichment claim; and (4) a fraud in the inducement claim. (Doc. 34, ¶¶ 8–9, 41–78.)

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d at 732.

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured

by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## IV.   DISCUSSION

### A.   Motion for Sur-Reply

As a threshold matter, Dr. Cain requested the Court consider a sur-reply filed "for the sole purpose of addressing the applicability of the economic loss doctrine" raised in IFG's reply to the opposition to the motion to dismiss.  (Doc. 45 at 2.)  Courts generally view motions to file a sur-reply with disfavor.  *See Hill v. England*, No. CVF05869RECTAG, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005).  However, permitting a sur-reply is within the discretion of the district court.  *See id.*  "Although the court in its discretion [may] allow the filing of a sur-reply, this discretion should be exercised in favor of allowing a sur-reply only where a valid reason for such additional briefing exists." *Johnson v. Wennes*, No. 08-cv-1798, 2009 WL 1161620, at *2 (S.D. Cal. Apr. 28, 2009).  Good cause to permit a party to file a sur-reply may exist "where the movant raises new arguments in its reply brief." *Hill*, 2005 WL 3031136, at *1.  Neither the federal rules nor the local rules permit a sur-reply as a matter of course.

Dr. Cain argues that IFG's reply "argues for the first time that the economic loss doctrine bars Dr. Cain's fraud in the inducement claim." (Doc. 45 at 2.)  Arguably, IFG's reply brief does not raise new arguments—it merely extrapolates on the potentially duplicative nature of a contract claim and a fraud claim under the header of the economic loss doctrine, (Doc. 43 at 11), an argument that was raised in a general sense in the opening motion to dismiss (*see* Doc. 36-1 at 24 (arguing that "[u]nder Delaware law, a plaintiff's fraud claim 'may not simply "rehash" the damages allegedly caused by the breach of contract'; it must allege damages 'caused by the fraud separate and apart from the alleged breach damages'").)  Even if the mention of the economic loss doctrine could be interpreted as raising a distinct argument, the Court does not rely on the economic loss doctrine in its analysis of the fraud claim and therefore declines to consider the

1  sur-reply for that additional reason.  Thus, Dr. Cain's motion to consider the sur-reply is

2  **DENIED** and the Court hereby strikes the accompanying briefing.

3  **B.     Breach of Contract Claim**

4  Dr. Cain alleges that "[u]nder the Buyout Agreement, IFG had a contractual obligation to pay Dr. Cain the royalty payments that continued to accrue between the time the Purchase Agreement was executed and when the transaction closed." (Doc. 34, ¶ 42.) Dr. Cain alleges that by withholding the approximately $12 million allegedly owed in royalties that accrued between the execution of the Buyout Agreement and closing, IFG breached the Buyout Agreement. (Doc. 34, ¶¶ 41–51.) Under Delaware law, "[i]n order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).[1] The parties do not dispute the existence of the contract—the Buyout Agreement—but rather, if there was a breach of an obligation imposed by that contract. (*See* Docs. 36-1 at 13–18; 42 at 11–20.)

The Buyout Agreement provides that:



---

[1] The parties do not dispute that the Delaware choice of law clause in the Buyout Agreement governs the breach of contract claim. (*See generally* Docs. 36; 42; 43.)

[2] The Purchase Agreement is not before the Court. However, the parties do not dispute that closing occurred on August 11, 2023. (*See* Docs. 34, ¶ 8; 36-1 at 11.)

1  ███████████████████████████████████████████

2

3  (Doc. 44 at 2–3.) The "Cain Agreements" repeatedly referenced within the Buyout Agreement

4  are the Employment and Patent Acknowledgement agreements entered into by the parties on

5  January 1, 2001. (Doc. 44 at 2.) On the point of royalties, the Cain Agreements provide that

6  "[t]he Company will pay on a calendar year basis to the Employee, in addition to the Base Salary,

7  a royalty based on income generated from licensing or technology fees and royalty fees from

8  marketed fruit which result from the newly developed varieties." (Doc. 34-1 at 3.)

9  "When interpreting a contract, the role of a court is to effectuate the parties' intent."

10  *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). However, "[i]n

11  deciding a motion to dismiss, the trial court cannot choose between two differing reasonable

12  interpretations of ambiguous provisions." *VLIW Tech., LLC*, 840 A.2d at 615. Dismissal under

13  Rule 12(b)(6) "is proper only if the defendants' interpretation is the *only* reasonable construction

14  as a matter of law." *Id.* "Ambiguity exists 'when the provisions in controversy are reasonably or

15  fairly susceptible of different interpretations.'" *Id.* (quoting *Vanderbilt Income & Growth Assocs.*

16  *v. Arvida*, 691 A.2d 609, 613 (Del. 1996)). If the provisions at issue are susceptible to more than

17  one reasonable interpretation, then for the purposes of deciding a motion to dismiss, "their

18  meaning must be construed in the light most favorable to the non-moving party." *Id.*

19  Dr. Cain alleges that "IFG had a contractual obligation to pay Dr. Cain those royalty

20  payments ████████████████████████████████████

21  ████████████████████████████████████████████

22  ████████████████████ (Doc. 34, ¶ 42.)[3] IFG contends that, because the terms of the Cain

23  Agreements specify that "Dr. Cain's royalty compensation has always been paid 'on a calendar

24  year basis' 'within sixty (60) days of each calendar year-end,'" there could be no interim,

25  mid-year payment for royalties accrued between January 1, 2023, and closing on August 11,

26  2023. (Doc. 36-1 at 14.) IFG argues that according to the language of the agreement, "Company

27

28  [3] It is undisputed that IFG provided payment of the royalties accrued for the year 2022. Thus, the focus of the breach of contract royalties issue is on the alleged accrual of royalties from January 1 to closing on August 11, 2023. (*See* Doc. 34, ¶ 37; 36-1 at 14.)

5

1  will pay on a calendar year basis" such that the royalty payment can only be made on an annual
2  basis, not prorated to accommodate a partial year payment for the August 2023 closing. (Doc.
3  36-1 at 14.)
4       The Buyout Agreement provides that ████████████████████████████
5  ███████████████████████████████████████████████████████████████████
6  ███████████████████████████████████████████████████
7  ████████████████████████████ (Doc. 44 at 2–3.) IFG contends that this Buyout
8  Agreement language, paired with the "Company will pay on a calendar year basis" language,
9  unambiguously establishes the accrual timeline and payment schedule such that accrual occurs on
10 a yearly basis and accordingly can only be paid on a yearly basis. (Doc. 36-1 at 14–16.) Dr. Cain
11 argues that the payment on a calendar year basis is a mere function of convenience because it
12 would be impractical for IFG to calculate royalties on a daily or weekly basis, but the payment
13 schedule does not modify the accrual of royalties on income received day to day. (Doc. 42 at 13–
14 14.) Dr. Cain contends that the Buyout Agreement language indicates that accrual is not on a
15 year-to-year basis, and as such, IFG owes Dr. Cain a prorated royalty payment for the partial year
16 up until the August 2023 closing. (Doc. 42 at 13–14.)
17       The record reflects that the contractual provisions regarding royalty accrual and payment
18 are ambiguous. Because the provisions at issue in the Buyout Agreement and Cain Agreements
19 are susceptible to more than one reasonable interpretation, for the purposes of deciding the
20 motion to dismiss, their meaning must be construed in the light most favorable to Dr. Cain, the
21 non-moving party. *See VLIW Tech., LLC*, 840 A.2d at 615. The Court "must not dismiss any
22 claim pursuant to Rule 12(b)(6) unless it appears with reasonable certainty that the plaintiff
23 cannot prevail on any set of facts which might be proven to support the allegations in the
24 complaint." *Id.* Applying that standard here, the Court holds that Dr. Cain's complaint
25 adequately states an alleged breach of contractual obligation, and thus, a set of facts upon which
26 relief may be granted.[4] Therefore, IFG's motion to dismiss the breach of contract claim is

---

[4] The parties dispute the applicability of extrinsic evidence—particularly email negotiations preceding the conclusion of the Buyout Agreement—to resolve any ambiguity present in the interpretation of the contractual provisions. (Docs. 36-1 at 16–18; 42 at 17–19; 43 at 6.) Delaware law is clear that "when parties present

**DENIED**.

**C.     Breach of the Covenant of Good Faith and Fair Dealing Claim**

As an alternative to the breach of contract claim, Dr. Cain alleges that "IFG made an implied covenant to act reasonably to fulfill the intent of the parties to the Buyout Agreement . . . [and] because the Buyout Agreement contemplates that Dr. Cain would continue to *accrue* royalties up until the closing, there is an implied covenant that Dr. Cain would also *be paid* the royalties that had accrued up until the closing." (Doc. 34, ¶ 54 (emphasis in original).) Thus, Dr. Cain alleges that "IFG breached the implied covenant by taking the position . . . that it will not pay Dr. Cain the accrued but unpaid 2023 royalty payments." (Doc. 34, ¶ 57.)

"The implied covenant is inherent in all contracts and is used to infer contract terms to handle developments or contractual gaps that . . . neither party anticipated." *Dieckman v. Regency GP LP*, 155 A.3d 358, 366 (Del. 2017) (cleaned up).[5] The implied covenant applies "when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected. The reasonable expectations of the contracting parties are assessed at the time of contracting." *Id.* To sufficiently allege an implied covenant claim, a plaintiff must allege "a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Cygnus Opportunity Fund, LLC v. Washington Prime Group, LLC*, 302 A.3d 430, 458 (Del. Ch. Aug. 9, 2023).

To determine if an implicit obligation exists, a court "first must engage in the process of contract construction to determine whether there is a gap that needs to be filled." *Allen v. El Paso Pipeline GP Co., LLC*, 113 A.3d 167, 183 (Del. Ch. June 20, 2024). "Through this process, a court determines whether the language of the contract expressly covers a particular issue, in which case the implied covenant will not apply, or whether the contract is silent on the subject,

---

differing—but reasonable—interpretations of a contract term, the Court turns to extrinsic evidence to understand the parties' agreement." *Markow v. Synageva Biopharma Corp.*, 2016 WL 1613419, at *5 (Del. 2016). However, "[s]uch an inquiry cannot proceed on a motion to dismiss." *Id.* Therefore, the Court will not delve into any considerations of extrinsic evidence, because "[a]t the motion to dismiss stage, the Court 'cannot choose between two differing reasonable interpretations of ambiguous provisions.'" *Id.* (quoting *VLIW Tech., LLC*, 840 A.2d at 615).

[5] The parties do not dispute that the Delaware choice of law clause in the Buyout Agreement governs the implied covenant of good faith and fair dealing claim. (*See generally* Docs. 36; 42; 43.)

revealing a gap that the implied covenant might fill." *NAMA Hldgs., LLC v. Related WMC LLC*, 2014 WL 6436647, at *16 (Del. Ch. Nov. 17, 2014). The court must first find a gap in the contract because "[t]he implied covenant will not infer language that contradicts a clear exercise of an express contractual right." *Nemec v. Shrader*, 991 A.2d 1120, 1127 (Del. 2010). "If a contractual gap exists, then the court must determine whether the implied covenant should be used to supply a term to fill the gap. Not all gaps should be filled." *Allen*, 113 A.3d at 183. "The implied covenant seeks to enforce the parties' contractual bargain by implying only those terms that the parties would have agreed to during their original negotiations if they had thought to address them." *Gerber v. Enter. Prods. Hldgs., LLC*, 67 A.3d 400, 418 (Del. 2013). "Existing contract terms control, however, such that implied good faith cannot be used to circumvent the parties' bargain, or to create a free-floating duty unattached to the underlying legal document." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) (cleaned up).

The application of the implied covenant is a "cautious enterprise." *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010). Implied covenants are "not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to a contract." *Id.* at 1128. "Even where the contract is silent, an interpreting court cannot use an implied covenant to re-write the agreement between the parties, and should be most chary about implying a contractual protection when the contract could easily have been drafted to expressly provide for it." *Oxbow Carbon & Mins. Hldgs., Inc. v. Crestview-Oxbow Acq., LLC*, 202 A.3d 482, 507 (Del. 2019).

IFG argues that Dr. Cain fails to plead "any specific implied contractual obligation" about the accrual and payment of royalties because the Buyout Agreement "already contains express terms controlling royalty payments." (Doc. 36-1 at 18.) IFG contends that Dr. Cain improperly relied on "allegations about conduct around the closing of the asset sale," and that any reliance on these conversations would turn the cause of action into a "sort of free-floating duty, unattached to the underlying legal document." (Doc. 36-1 at 19.) Dr. Cain avers that this cause of action is intentionally pled in the alternative to the breach of contract claim to maintain potential recovery of the royalties "to the extent the Court does not read the Buyout Agreement to *expressly provide*

1  that Dr. Cain was entitled to be paid royalties that accrued but were not yet 'due' at the closing."

2  (Doc. 42 at 21 (emphasis in original).)  Dr. Cain contends that IFG "had knowledge and control

3  over when the closing would occur, and it was required to refrain from manipulating the closing

4  in a way that would deprive Dr. Cain from being paid royalties that accrued."  (Docs. 42 at 21;

5  34, ¶ 54.)

6        Dr. Cain's First Amended Complaint sufficiently pleads a breach of an implied covenant

7  of good faith and fair dealing.  Though IFG argues that the Buyout Agreement does not provide

8  for a specific implied contractual obligation, Dr. Cain alleges that the implied covenant only

9  exists to the extent that the Buyout Agreement is found not to have specified that royalties

10  accrued prior to closing are to be paid.  (Doc. 34, ¶ 54.)  As the Court explained earlier, it is

11  premature to determine at the motion to dismiss stage the appropriate contractual interpretation.

12  *See also VLIW Tech., LLC*, 840 A.2d at 615.  Dr. Cain permissibly pled an alternative cause of

13  action predicated on an alternative contractual construction.  Following the alternative

14  construction that there was an implied duty to pay the royalties that accrued prior to closing, Dr.

15  Cain sufficiently alleged that IFG breached that obligation and damages resulted from IFG not

16  transmitting the royalties. (Doc. 34, ¶¶ 57–58.)  Therefore, IFG's motion to dismiss the breach of

17  an implied covenant of good faith and fair dealing claim is **DENIED**.

18  **D.**    **Unjust Enrichment Claim**

19        Dr. Cain also alleges that "IFG retained all the income that was generated between

20  January 2023 and August 2023, but IFG did not pay Dr. Cain the royalties from the income

21  generated within that period.  IFG's actions represent the receipt and unjust retention of a benefit

22  at the expense of Dr. Cain."  (Doc. 34, ¶ 65.)  Dr. Cain argues that California law governs the

23  unjust enrichment claim because such a cause of action is asserted when a contract is found

24  unenforceable or ineffective.  (Doc. 42 at 22.)  IFG asserts that Delaware law governs the unjust

25  enrichment claim because it is closely related to the Buyout Agreement which contains a

26  Delaware choice of law provision.  (Doc. 36-1 at 20.)

27        Delaware law applies to the unjust enrichment claim here.  "In determining the

28  enforceability of a choice of law provision in a diversity action, a federal court applies the choice

of law rules of the forum state, in this case California." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009). "If the parties state their intention in an express choice-of-law clause, California courts ordinarily will enforce the parties' stated intention." *Id.* (quoting *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1450 n.7 (2007)). California courts will enforce this express intention if: "(1) the chosen jurisdiction has a substantial relationship to the parties or their transaction; or (2) any other reasonable basis for the choice of law provision exists." *Id.* If either of these tests is met, the court will enforce the choice of law provision unless the chosen jurisdiction's law is contrary to California public policy. *Id.* "[A] valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duty emanating from the agreement or the legal relationships it creates." *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 470 (1992).

As the Ninth Circuit held, when an unjust enrichment is alleged to have arisen in the course of performing the contract, "issues arising in the restitution action are to be resolved in accordance with the law adopted in the choice of law provision." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 902 F.2d 1400, 1403 (9th Cir. 1990). In *Alaska Airlines*, the Ninth Circuit contemplated if the choice of law provision governs even if the underlying contract is found unenforceable. *See id.* The court held that it is "appropriate to apply the choice of law clause to the unjust enrichment claim" because "the claim was closely related to the parties' contractual relationship." *Id.* (cleaned up). Thus, even if the underlying Buyout Agreement is deemed unenforceable or ineffective as Dr. Cain argues, it is appropriate "to apply the choice of law clause to all claims arising out of it, including restitution." *See id.* (*See* Doc. 42 at 22.) Therefore, the choice of law clause in the Buyout Agreement applies, and Delaware law governs the unjust enrichment cause of action.

Under Delaware law, unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)). To

1  adequately plead an unjust enrichment claim, plaintiff must plead: "(1) an enrichment, (2) an
2  impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of
3  justification, and (5) the absence of a remedy provided by law." *Id.*

4  Dr. Cain has adequately pled the first three elements by alleging that IFG received
5  additional revenue through the royalties accrued but not paid to Dr. Cain. *See Garfield v. Allen*,
6  277 A.3d 296, 341 (Del. Ch. May 24, 2022) (holding that a plaintiff sufficiently pleads the first
7  three elements by alleging that the defendant possesses the value that plaintiff alleges rightfully
8  belongs to them). (Doc. 34, ¶ 65.) Dr. Cain sufficiently pled the fourth element (absence of
9  justification) by alleging that IFG failed to explain or represent why IFG could retain the royalty
10 payments accrued up until closing. *See id.* (holding that plaintiff sufficiently pleads the absence
11 of justification by asserting that defendant should not have received the contested value). (Doc.
12 34, ¶ 64.)

13 IFG focuses its argument on the fifth argument. (*See* Docs. 36-1 at 20–22; 43 at 8–9.)
14 IFG contends that because Dr. Cain has alleged a breach of contract claim in which Dr. Cain
15 affirmatively pled the express language of the Buyout Agreement governs the royalties, Dr. Cain
16 cannot now allege an alternative unjust enrichment claim. (Doc. 36-1 at 20–22.) As Dr. Cain
17 argues, (Doc. 42 at 22), bringing a breach of contract claim alone is not a concession of the fifth
18 element. *See Garfield*, 277 A.3d at 346 (holding that the presence of a breach of contract claim
19 does not mean that the fifth element automatically fails because "under that reasoning, any
20 plaintiff who pleads a cause of action in addition to unjust enrichment has hoisted itself on its
21 own petard. Only an unadorned complaint asserting a single claim for unjust enrichment would
22 have any chance of success"). However, Delaware law has clarified that "'unjust enrichment
23 claims that are premised on an express, enforceable contract' fail to state a claim." *Intermec IP*
24 *Corp. v. TransCore, LP*, 2021 WL 3620435, *16 (Del. Super. Aug. 16, 2021). Only when the
25 unjust enrichment claim "consider[s] facts that were not covered, expressly or impliedly, by the
26 subject agreement" can a breach of contract and unjust enrichment claim survive a motion to
27 dismiss. *See id.* at *17. Dr. Cain's unjust enrichment claim relies upon the existence of the
28 Buyout Agreement to allege that IFG's retention of the royalty payments would rise to the level

11

of an unjust enrichment.  (Doc. 34, ¶¶ 61–65.)  Because Dr. Cain's unjust enrichment claim does not dispute the scope or validity of the Buyout Agreement to the royalty payments, the unjust enrichment claim cannot proceed.  On the other hand, the Court cannot find that Dr. Cain is unable to state a claim for unjust enrichment. *Intermec IP Corp*. at 17, n. 160 [quoting *Avantix Labs., Inc. v. Pharmion, LLC*, 2012 WL 2309981, at *9 (Del. Super. Ct. June 18, 2012) for the proposition that an unjust enrichment claim can proceed at the pleading stage "where the breach is based on a 'claim not governed exclusively by the contract at issue' and holding an unjust enrichment claim could proceed alongside breach-of-contract claims because some alleged services on which unjust enrichment was based were not 'addresse[d]' by the subject contract's scope").]  Therefore, IFG's motion to dismiss this cause of action is **GRANTED** with leave to amend.

**E.     Fraud in the Inducement Claim**

As yet another alternative to the breach of contract claim, Dr. Cain alleges that "IFG never intended to pay Dr. Cain royalties that accrued but were not yet due prior to the closing, but it knew that Dr. Cain would not have made or agreed to all of the terms in the Buyout Agreement if Dr. Cain was aware that IFG did not intend to pay *all* accrued royalty payments up until the closing."  (Doc. 34, ¶ 73 (emphasis in original).)  Dr. Cain avers that he justifiably relied upon IFG's false representations, and that IFG committed fraud with the intent to deprive Dr. Cain of his right to the allegedly accrued royalty payments.  (Doc. 34, ¶¶ 67–78.)  Dr. Cain argues that California law must govern the fraud claim "because California has a materially greater interest in the determination of the fraud claim, and it would be contrary to a fundamental policy of California for Delaware law to apply to this claim."  (Doc. 42 at 23–24.)  IFG contends that the parties have "stated their intention in an express choice-of-law clause" which must be applied to the fraud claim here.  (Doc. 43 at 9–10.)  IFG argues that under Delaware law, the fraud claim must be dismissed because the anti-reliance clause in the Buyout Agreement bars the fraud claim, and even if the court disagrees, Dr. Cain failed to plead his fraud claim with particularity.  (Doc. 36-1 at 22–23.)

As discussed previously, the Court will extend the choice of law provision to tort claims,

from bringing a fraudulent inducement claim. *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004).

Here, the integration clause in the Buyout Agreement provides that:

███████████████████████████████████████████████

(Doc. 44 at 7.) Further, the Buyout Agreement states that:

███████████████████████████████████████████████

(Doc. 44 at 6.) Taken together, these clauses amount to a disclaimer of the type discussed in *Kronenberg* by disclaiming any reliance on extracontractual representations. *See Kronenberg*, 872 A.2d at 593.[6] Because Dr. Cain disclaimed any justifiable reliance upon representations beyond the four corners of the contract, his fraudulent inducement claim fails as a matter of law. Thus, IFG's motion to dismiss the fraudulent inducement claim is **GRANTED**. Because amendment is futile, this cause of action is dismissed with prejudice.

## CONCLUSION

For the reasons set forth above:

1. Dr. Cain's motion for sur-reply is **DENIED**.
2. IFG's motion to dismiss the breach of contract claim is **DENIED**.
3. IFG's motion to dismiss the breach of an implied covenant of good faith claim is **DENIED**.
4. IFG's motion to dismiss the unjust enrichment claim is **GRANTED** with leave to amend.
5. IFG's motion to dismiss the fraudulent inducement claim is **GRANTED** without leave to amend.

---

[6] As Dr. Cain acknowledges, under Delaware law, the presence of a valid integration and anti-reliance clause may prohibit fraudulent inducement claims. (Doc. 42 at 24.)

The plaintiff SHALL file an amended complaint, if at all, within 21 days. Failure to do so will result in the action moving forward without the unjust enrichment claim. The defense SHALL file a responsive pleading within 21 days of the filing of the amended complaint.

IT IS SO ORDERED.

Dated: __**October 24, 2024**__

UNITED STATES DISTRICT JUDGE