1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11   DAVID W. CAIN,                     Case No. 1:23-cv-01249-JLT-CDB

12         Plaintiff,                   **STIPULATION AND
                                        [PROPOSED] ORDER**
13      v.                              **REGARDING PRODUCTION OF
                                        DOCUMENTS AND**
14   INTERNATIONAL FRUIT                **ELECTRONICALLY STORED
     GENETICS, LLC,**                   **INFORMATION ("ESI")**
15
16         Defendant.

17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff/Counterclaim-Defendant David W. Cain ("Cain") and Defendant/Counterclaim-Plaintiff Close Demeter LLC, f/k/a International Fruit Genetics, LLC ("IFG"), by and through their undersigned counsel, STIPULATE AND AGREE to the following proposed Order for the production of Documents and Electronically Stored Information ("ESI") in the above-captioned matter (the "Order").

## I.    GENERAL

1.    This Order shall govern the discovery of Documents and ESI in this action. It is intended as a supplement to the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), the Local Rules of this Court, and any other applicable orders and rules. To the extent this Order is silent on an issue, the scope of discovery under Fed. R. Civ. P. 26(b) shall guide the Parties.

2.    The Parties are aware of the importance the Court places on cooperation and agree to meet and confer in good faith throughout the course of this action.

3.    Nothing in this Order shall supersede the provisions of any applicable protective order entered in this action (ECF No. 63) (hereinafter, the "Protective Order").

4.    Nothing in this Order shall be deemed to constitute a waiver of any objections a producing party may have with respect to any discovery request.

5.    Subject to the Parties' objections and responses to requests for production of Documents, all Documents that are identified as responsive to discovery requests shall be produced in the manner provided herein.

## II.    DEFINITIONS

6.    "**Document**" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 26 and 34. The term "Document" shall include both Hard-Copy Documents and ESI as defined herein.

7.    "**Electronically Stored Information**" or "**ESI**" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 26 and 34,

and includes any Document or other data existing in electronic form at the time of collection, including but not limited to: email or other means of electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spread sheets (e.g., Excel and .CSV), and image files (e.g., PDF and .JPG).

**8.**    "**Hard-Copy Document**" means a Document existing in paper form at the time of collection, or otherwise stored in a manner other than electronically.

**9.**    "**Native Format**" or "**Native File**" mean and refer to the format of ESI in which it was created, maintained, generated, and/or used by the producing party in the usual course of the party's business and the party's regularly conducted activities. For example, the native format of an Excel workbook is the .xls or .xlsx file.

**10.**    "**Metadata**" means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, which describes the characteristics, origins, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

**11.**    "**Optical Character Recognition**" or "**OCR**" means the optical character recognition file created by software used in conjunction with a scanner capable of reading text-based Documents and making such Documents searchable using appropriate software.

**12.**    "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.

**13.**    "**Confidentiality Designation**" means the legend affixed to Documents for confidential discovery information as defined by, and subject to, the terms of the Protective Order.

14. "**Searchable Text**" means the native text extracted from ESI and any OCR text generated from a Hard-Copy Document or electronic image.

15. "**Load File**" means an electronic file provided with a production set of document images that facilitate the loading of such information into a receiving party's document review platform, and the correlation of such data in the platform.

16. "**Unitization**" means a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.

### III.    DATA SOURCES AND CULLING CRITERIA

17. **Reasonably Accessible Sources of ESI:** Each party, in accordance with their responses and objections to the opposing party's discovery requests, shall conduct diligent searches of all reasonably accessible sources that it has reason to believe may contain relevant, non-duplicative ESI.  Reasonably accessible sources of unstructured ESI include, but are not limited to, computer hard drives, shared network drives, shared repositories and email servers. The parties need not search ESI sources that are likely to contain only information that is duplicative of ESI in sources that have already been searched.

18. **Data Sources Not Reasonably Accessible:** If a Party determines that certain sources of ESI are not reasonably accessible as contemplated in FRCP 26(b)(2)(B), the Parties shall meet and confer regarding the producing Party's obligation to collect and review information from such source(s).

19. **Search Criteria**. The parties shall meet and confer to identify reasonable search criteria including search terms, custodians and date ranges. If the parties are unable to reach agreement on search criteria, they shall seek an informal discovery conference with Magistrate Judge Baker as outlined in the Scheduling Order.

20. **Technology Assisted Review**. Any Party intending to use technology assisted review to cull the documents to be reviewed or produced must disclose this

3

intention to the receiving Party prior to use, and the parties shall meet and confer on the use of such technology.

**21.    Production of Known Responsive Documents**. The Parties agree that no Document that is known to be responsive to a requesting party's Rule 34 Document request shall be withheld solely on the basis that the Document is not captured by the Parties' agreed-upon search parameters or methodology.

**22.    De-NISTing and Zero-Byte Files**. The Parties may exclude system-generated files and folders that are not likely to contain user-created files from their review that are contained on the current NIST file list not otherwise required for production by this Order, or that are identified as zero bytes in size.

**23.    De-Duplication Across Custodians**. A Party is only required to produce a single copy of a responsive Document, and a Party shall make reasonable efforts to de-duplicate responsive ESI across custodians. The fields upon which the Hash Value of emails are calculated shall be disclosed by the producing party. The producing party will provide a duplicate custodian field in the production Load File identifying each custodian of a particular Document that was eliminated through de-duplication as well as the file path in which the Document was kept in the ordinary course in the duplicate custodian's files. If all recipient custodians are documented for removed Documents in the Duplicate Custodian field, the Producing Party need only produce a single copy of the particular Document.  For emails with attachments, the Hash Value shall be generated based on the parent-child document grouping, and only email messages in which the parent document and all attachments are exactly the same will be considered duplicates. An email that includes additional or different content in the recipient fields (i.e., TO, CC, BCC) shall not be treated as a duplicate of an email that is otherwise identical aside from the recipient fields. For Documents, prior drafts thereof will not be considered duplicates. The Custodian, FilePath, and EmailFolder will be included (for all available copies of responsive ESI) in the respective CUSTODIAN(S), FILEPATH(S), and EMAIL_FOLDER(S) fields in the

4

production Load File. In addition, if the email files were collected directly from the Microsoft Exchange server, outlook.ost files may be excluded from processing as duplicative of outlook.pst files unless only the .ost file version is available.

24.    **Email Threading**: Each party may also deduplicate or "thread" emails in such a way as to eliminate earlier or incomplete chains of emails, and produce only the most complete iteration of an email chain, except where an earlier or incomplete iteration of an email chain contains an attachment or unique data.

## IV.    FORMAT OF PRODUCTION

25.    **Data Processing.** When processing ESI review and for production, to the extent reasonably practicable, the producing party shall force off Auto Date and force on hidden columns or rows, hidden worksheets, speaker notes, track changes, and comments.

26.    **Production Format.** All ESI shall be produced in the following forms:

a. Bates stamped, readable, OCR searchable and non-password protected PDF (.pdf) multi-paged images or TIFF (.tiff) images. For files produced as TIFF images, each page of a Document shall be electronically saved as an image file. If a Document consists of more than one page, the unitization of the Document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image files. The producing Party shall produce a unitization file ("load file") for all produced Documents. Accompanying a TIFF production shall be a multipage text (.TXT) file containing searchable text from the native file, including, with regard to email, the email header text, and the metadata as discussed below. Load files of the Static Images shall be created and produced together with their associated Static Images to facilitate the use of the produced images by a Document management or litigation support database system.

5

b. Native format with all corresponding metadata. Spreadsheets (e.g., Excel, Lotus), video/audio files (e.g., wav, .mp3, .aiff, .wmv), and such other Document types upon which the Parties may agree, should be produced in native format. If production in native format is necessary to decipher the meaning, context, or content of a Document produced according to the prescribed format, the producing party will honor reasonable requests made in good faith for either the production of the original Document for inspection and copying or production of the Document in native format. All Documents produced solely in native format should (i) have an assigned Document level Bates number, (ii) be renamed according to the assigned Bates number, and (iii) have a "nativepath" populated along with the metadata load file. To the extent a party also produces TIFF images of certain ESI, native file productions shall also be accompanied by a TIFF placeholder with the Bates number and original filename endorsed ("burned") onto the image, as well as any confidentiality designation associated with that Document. Compliance with these provisions shall not constitute spoliation.

**27.    Hard-Copy Documents**. Hard-Copy Documents should be produced as single- page, black and white Group IV TIFF images (300 DPI resolution) with coded data contained in a separate file. The producing party shall also provide document-level OCR text files to accompany the TIFF format production. The minimum fields for a scanned Hard-Copy Document record will be BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN indicating the beginning and ending Bates numbers, attachments ranges of all documents, and the custodian information. Hard-copy documents shall be OCR'd and the OCR text shall be provided as one .TXT file per document. If a Hard-Copy Document consists of more than one page, the Unitization of the Document and any attachments shall be maintained as it existed

in the original Document, so that each document will not be split, but instead the pages thereof shall be sequenced and saved together, as they existed in the original. Pages containing affixed notes, such as Post-Its, will be scanned with and without the note, with the image with the note preceding the image without the note.

**28.    Documents to be Produced in Color**. Documents need not be produced in color as a matter of course.  However, if an original Document contains color that is necessary to understand the meaning or content of the Document, the Document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. Documents that shall be produced in color, include, but are not limited to: Documents containing charts, graphs, or tables that have colored legends, Documents with highlighting, documents where authorship is denoted by colored text; and Documents where information, data, or categories are distinguished by color. Further, a Party may request that additional Documents be reproduced in color by making a specific request in writing, and the request shall not be denied except upon a showing of good cause.

**29.    Parent-Child Relationships**. The association between a document and any attachments thereto shall be preserved. Attachments to a document will be consecutively produced immediately after the parent document. The producing party shall insert a slip sheet for any attachment over which the producing party claims privilege while maintaining the original consecutive order of the attachment(s).

**30.    Bates Numbering**. Each page of a produced image shall have a unique Bates number electronically "stamped" or "burned" on the image at a location that does not conceal or obscure any information from the source Document. Each TIFF image or native file shall be assigned a Bates number that is unique. Each producing party's production will be Bates-numbered consecutively with a consistent prefix and number of digits across the entire document production (e.g., ABC00001,

STIPULATION REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION

ABC00002, etc.). No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

**31. Confidentiality**. ESI produced in discovery may be labeled with Confidentiality Designations pursuant to the Protective Order. In the case of TIFF images, confidentiality legends shall be "stamped" or "burned" on the image at a location that does not conceal or obscure any information from the source document. For materials produced in Native Format, the producing party shall name the file with the Bates number followed by the Confidentiality Designation and the file extension. A failure to make a designation through fielded data or a naming of the file may be corrected by promptly notifying the other side of the mistaken designations of confidential materials in accordance with the Protective Order.

**32. Production Media**. Documents shall be produced through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission. The volume number and Bates number range(s) of the materials shall be with the transmission. If a producing party encrypts or "locks" a production, the producing party shall send, under separate correspondence, the password for decrypting the production.

## V.    REDACTED DOCUMENTS

**33. Permitted Redactions**. The Parties may redact from Hard-Copy Documents, ESI, or metadata fields information over which the producing party asserts a claim of privilege, that is required to be redacted by applicable law or regulation, or that is otherwise permitted to be redacted by any other Order governing this action. The producing party shall identify redactions clearly on the face of any TIFF image and in the Metadata with a tag within the text of the document labeled with either "Redacted" or with the reason for the redaction (e.g., "Attorney-Client Privilege"). Redactions for privilege must be done so as not to conceal non-privilege information including sender, recipients, date and subject line.

## VI.    MISCELLANEOUS

**34. Objections Preserved.** Nothing in this Order shall be interpreted to

require disclosure of non-responsive or privileged documents or information. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Hard-Copy documents and ESI.

35.    **Clawback Protection**. The productions of Hard-Copy documents and ESI are subject to the Parties' rights under the Protective Order, the rules and practices of this Court, Fed. R. Civ. P. 26(b)(5), and Federal Rule of Evidence 502, to request the return of inadvertently produced discovery.

36.    **Modification**. This Order may be modified by a stipulation of the Parties with approval of this Court or by the Court for good cause shown.

37.    **Further Conferral**. If any Party determines that any of the requirements in this Order pose an issue with respect to compliance, the producing party shall promptly notify the receiving party of the issue and the Parties shall meet and confer regarding that issue, including discussing, as appropriate, an alternative process or processes. If the issue cannot be resolved, the Parties they shall seek an informal discovery conference with Magistrate Judge Baker as outlined in the Scheduling Order.

Dated: September 24, 2025

DENTONS US LLP


By:    /s/ Andrew Pendexter
_____
Andrew Pendexter
Leah R. Bruno
Kenneth J. Pfaehler
Blake Osborne

*Counsel for Defendant*
Close Demeter LLC, f/k/a/
International Fruit Genetics, LLC

9

1   Dated: September 24, 2025         VENABLE LLP

2

3                             By:     */s/ Belinda M. Vega* (as authorized on September 18, 2025)

4                                    Belinda M. Vega
                                    Witt W. Chang

5                                    Halena Ngo

6                             *Attorneys for Plaintiff*

7                             David W. Cain

8   IT IS SO ORDERED.

9    Dated:   **September 25, 2025**

10                                  UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

1

## **EXHIBIT A**

2

3   The following metadata fields (to the extent available) shall accompany each

4   produced ESI file.

5        a.    BegDoc (beginning Bates number of the first page of a Document)

6        b.    EndDoc (ending Bates Number of the last page of the Document)

7        c.    BegAttach (Bates number associated with the first page of a parent

8              Document)

9        d.    EndAttach (Bates number associated with the last page of the last

10             attachment to a parent Document)

11       e.    Attach Count (number of attachments to an email or e-doc)

12       f.    DocTitle (e-docs only)

13       g.    ThreadID (emails only)

14       h.    Thread_in_Reply_to (emails only)

15       i.    Thread_references (emails only)

16       j.    File/folder path (the full path to the file at its original location)

17       k.    ParentID (beginning Bates number for the parent email or e-doc)

18       l.    Attchids (beginning Bates number(s) for the attachment(s) associates

19             with a parent of the email)

20       m.    FamilyID (An ID that is unique to the entire family group (email and

21             attachments)

22       n.    Family Date (for emails and attachments only, corresponding to the sent

23             or received date of the email to which the attachment is linked)

24       o.    MessageID (emails only)

25       p.    Sent Date (for emails and calendar invitations)

26       q.    Sent Time (for emails and calendar invitations)

27       r.    Last Modified Date (all Documents)

28       s.    Last Modified Time (all Documents)

         t.    Created Date (all Documents)

11

1    u.    Created Time (all Documents)

2    v.    Received Date (for emails only)

3    w.    Received Time (for emails only)

4    x.    Call Start (start date and time of a calendar or appointment)

5    y.    Last Print Date (for e-docs)

6    z.    Author (e-docs only)

7    aa.    From ("From" field in emails)

8    bb.    Recipients ("To" field in emails)

9    cc.    cc: (for emails only)

10    dd.    bcc: (for emails only)

11    ee.    Subject ("Subject" field in emails)

12    ff.    Participants (names included in a meeting invitation)

13    gg.    Attach Title (email attachments title list)

14    hh.    Application (type of application used to generate the Document)

15    ii.    Custodian

16    jj.    Duplicate custodian (the name of any custodian whose duplicate was

17    removed during the production)

18    kk.    MD-5 Hash Value

19    ll.    SHA-1 Hash Value

20    mm.    Page Count (number of pages in a Document)

21    nn.    Original File Name (the original file name of an e-doc or attachment to

22    an email)

23    oo.    Doc extension (the file extension of a Document)

24    pp.    Full Text (the full path to the OCR/extracted text file on Production

25    Media)

26    qq.    NativeLink (the full path to the native file produced)

27

28

STIPULATION REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION

131307801